The next case for argument is 23-1435, Hudo v. Metrotech. The next case is 23-1435, Hudo v. Metrotech. Mr. Jensen, good morning. Good morning, Your Honors. May it please the Court, our issue, our main issue is pretty simply, should the District Court have engaged in claim construction on a motion to dismiss? This Court said pretty clearly in Nalco v. Kim-Modds that that's generally inappropriate. At the pleading stage, that's not the time to be engaging in claim construction. Sure. Usually, District Courts do a loss in discovery and do a markment and all that kind of stuff, but is there any kind of real legal rule that they shouldn't or can't do it at a motion to dismiss stage? I mean, in that case, sure, in that case, maybe there were reasons they shouldn't have done it. But let's just assume the claim term at issue has a plenum ordinary meeting as a matter of law. There's no dispute whatsoever, and then the factual allegations in the complaint don't raise sufficient allegations of infringement under Red Sea Act, the plenum ordinary meeting of claim construction. What is there to prevent the District Court from saying, we're going to dismiss because your allegations don't meet the limitations of this claim on its face? Your Honor, that is what the District Court was doing here. I think that the Blackbird case ... That's what I'm asking you. What's wrong with that? If, as a matter of law, there's no dispute, and I understand we're getting to whether there's a dispute here.  No, well, but that's a different question. You got up here and said they shouldn't do it at the motion to dismiss. That may be the case in some cases, but there's no ... Is there a legal rule that says you can never do claim construction at a 12B6 stage? Never ever? There are circumstances, like Your Honor just said, if there's no dispute, and some of the cases that ... Right. And claim construction is a matter of law, right? Right. So even if the plaintiff disputes the legal interpretation of the claim construction, the District Court has the authority to decide, as a matter of law, that the claim means X, right? They don't have to rely ... You don't get a plausible allegation of law on your pleadings. You get ... All the factual allegations are construed in your favor, but the District Court still gets to decide what the law is. The District Court can decide that there's no need to engage in a claim construction or a claim construction hearing, because in this case, there's prosecution history estoppel, or in this case, the plaintiff didn't even suggest another ... The claim on its face is clear as a matter of law, which is what the District Court did here. The District Court found this claim was plain as a matter of law, and it included that the term group of data points was poor, right? I think the problem there is that the way the District Court ... No, no, no, no. Yes. Let me try this out. Let's assume that is the correct claim construction. I know you dispute it, but it's a matter of law, so we get to decide it as a matter of law, too, right? Right. If we think that the group of data points language clearly has to have plurals, then which one is dismissing your case, because the infringing device doesn't have plurals? Because it conflicts with the specification, and it ... No, no, no, no. That's a different question. Answer my question. If we conclude as a matter of law and argue that the claim term is plain and requires plurals, so we value that with the specification, then it is okay to dismiss, right? Well, I think that plurals is also a difficult ... Please answer my question. This is a hypothetical. I am not asking you to give away the case and what the specification says and all your arguments about plurals and singulars being interchangeable. We have decided as a matter of law that the District Court's claim construction here was correct. If that's the case, is this an affirm? This would be new, because that's not what the court said in NALCO. NALCO said it's not appropriate. But, yeah, if ... Okay, let's assume that our view or my view is the same as Judge Hughes, which is that there's not a legal barrier to doing claims construction at the 12B6 stage. It might depend. There might be circumstances there where it's inappropriate, and that may be your case. So, that is the argument. So, assume we're not as a matter of law, the District Court wasn't precluded from doing claims construction. What was there in your complaint? What did you put forth to say, no, there are things you have to do before you can reach this conclusion, and that's why we can't do it at 12B6? It's partly in the complaint, and it's partly in the argument. One of the arguments that we made was that he didn't go through the normal type of construction that you would under Phillips, where you say, I'm going to look at the whole patent, I'm going to consider the specification, and now I'm going to say what ... I think he did that, and I think maybe you may have misled a little ... I'm not ... Yeah. So, the suggestion that he didn't look at the spec comes from the preliminary injunction. Right. But I think in the papers before us, in the motion to dismiss, he clearly ... You may disagree with his conclusion, but he did clearly look at the language in the spec and discuss why that doesn't compel dislodging what he viewed as the plain language. Well, first of all ... He did deal with it. You just disagree with how he dealt with it. Well, what he dealt with was saying, I don't have to look at the specification, because it conflicts with my understanding of the plain meaning, and I believe that that is contrary to Phillips. Can I ask you this question? So, when I look at your opening frame construction brief, there is, if I remember right, significantly more material, including from the specification, that you argue bears on this question of two or more or one or more, as an interpretation of group. You point, I think, to specification material that you did not point to in the opposition to motion to dismiss. No.  We ... You said ... In the specification, it says one or more. It says that you could be ... Let me try to put my cards on the table, okay? I think there's material in the specification that helps you, that you do cite in your claim construction brief. I don't recall your citing in your opposition to motion to dismiss. I'm thinking, in particular, of a passage in column 12 that appears on its face to contemplate the idea of a single data point buffer zone. One and only one place, but nevertheless, it's there. I don't remember ... And then you also have the material in, I think, column five and column six, or column five and column nine, right? There are seven one or more passages. And the judicial court said, I don't really know what to make of one or more. I just think it can't possibly be enough, because group, to me, means more than one. Right. But you have more material. And I took your ... I'm going to call it a NALCO-based argument. To the extent you're arguing NALCO establishes a right line, it might suggest it, but it's not going to stand for that. It can't possibly stand for that for the reasons Judge Hughes and ... Judge Warrick? What? Judge Warrick? No, for the reason Judge Hughes ... Oh, I'm sorry. He's getting right here. He's discussing with you. Yes, okay. So it can't be a right line, even though it may sound like it is a right line. So then the question is just an incredibly case-specific, pragmatic one. Is there a relevant, relevant to the infringement question, issue of clerical construction that needs more process than has taken place? Well, we had three motions to dismiss that we responded to. We did mention the Column 9 and 10 language about one or more. And there's another one or more in Column 5. But then this buffer zone language seemed to me quite important in Column 12, and you do cite that in your current construction brief. And you also ... Do you also offer extrinsic evidence? We would have if we had a claim construction hearing.  So claim construction is a matter of law, but there can be underlying facts. What kind of extrinsic evidence constitutes either radio enough or actually constitutes extrinsic factual evidence is sometimes a little bit unclear. But I guess I took it that you were making kind of two arguments on the patent. One is you didn't get process that you should have gotten. Second is district court is wrong. Yes. Those are the two arguments other than NALCO, that if you are going to do a claim construction, you should look at the specification and not say, I'm going to disregard the specification. You don't disregard it, he just said. Sometimes spec statements cannot overcome something sufficiently plain. And he took the word group to be sufficiently plain. I take it you do actually dispute that. And I think actually you have decent grounds for disputing it. You know, I look at ... It's not easy to find the word group in various decisions. But I look, for example, at this IEX contract case. And it talks about a group of one or more agents. And he said that covers one or more. The word group doesn't negate what's later in the language. We have something a little bit similar where the word set is used in another case. Or list is what it is. And Judge Ehrlich relied on the idea that group should be treated the same as a plural. Even if that's true, we have a bunch of cases that say sometimes, depending on a variety of things like the spec, a plural can be one or more. The way that Congress says it is in 1 U.S.C. Section 1, that says the plural includes the singular. There's a lot more contextual stuff than just saying group means plural. Yes. This court in Versicourt v. Agbag said exactly that. It said in context, plural can be singular. Singular can be plural. But it all comes down to the context, right? I mean, the normal meaning of group is two or more. So in order to depart from the normal meaning, there has to be either a lexicography or some clear language in the specification to suggest that group shouldn't be given its ordinary meaning. Well, this court has said that you can have explicit lexicography or it could be implied from what's going on. Right. No, I'm not of the ilk that says for lexicography, it has to say group means X. It certainly can be inferred from the context. My question is, what is your best evidence for the word group? Because I find it a little bit hard to find. There are places where it talks about one or more, but it's hard to find that in the context of the term and the patent group. I think the most analogous case is Yogi. No, no, no. I don't care about Yogi. That's the point. If you're going to define group as including one or more, then it has to be clear, at least to me, you have to have done something in the specification to suggest that you have defined group in that way. Because it just can't be that the ordinary meaning of group is one. I mean, that's not the meaning you're going to find in any dictionary. That's not a common meaning. So you're not bound by dictionary meanings. You can alter the meaning of that term if that context in the specification, we'll leave aside the extrinsic evidence for now because I think that would be harder, but in the context of the specification, it's clear that when we used the word group of buried asset data points, you meant that that could just be a single asset data point. What's your evidence in the specification where you've defined group in that way? It's mostly columns 9 and 10 of the patent where it says that there could be one or more data points, and it says... Can you point me to the specific lines? Yeah, sure. This is at... The last three lines of column 9 over to the top four lines of column 10. Exactly. And you have something a little bit similar in the last four lines of column 5. Right. What it's saying is that in the situation where you are dealing with only one... Okay. The device calculates one or more buried asset data points for the targeted buried asset. So if it's calculating... I'm sorry. In the next sentence, the device uploads the buried asset data points. That's a use of a plural to refer back to what was just referred to, which includes one. Right. That, I think, by a long shot, is the best thing you have. And the question is, how good is that? I think it's good because it's the situation where you're only dealing with one data point. So what do you think would happen with the one data point? You're going to do a buffer zone around the one data point. It's going to be a circle, just like... Just to complete that, the passage on column 12, what I was referring to, is at line 16. It goes out to figure 4C. It shows that a circular, two-dimensional area comprising a buffer zone has been created around each buried asset data point. Other than that, it sure looks like everything else in the patent contemplates a buffer zone being defined by more than one data point. This seems... You know, you can certainly have a buffer zone, right? You have one point and do a circle around it. You now have a two-dimensional buffer zone. So that's one other thing. Weighing against that, or at least in my mind, weighing against it, is the fact that right at the beginning of the patent, the patent defines buried asset to be something linear. Buried asset is a utility line, which suggests... And you can't have a definition of a line without two points. So what do you do with that as a kind of fundamental, substantive, contextual point that this patent is entirely about buffer zones around lines and you just have to have two data points for that? It doesn't say anywhere in there that it has to be lines. It does discuss turning off the functions relating to... I'm sorry. It says the technical field in column one says the technical field relates generally to the detection and identification of buried assets, parentheses, i.e. underground utility lines. And then if you go down to line 54, utility lines are referred to as buried assets herein. You make a reference, which in your brief, I think, to a junction point. Right. I don't see that in the patent. Because it says that there could be one data point, that's why I was giving an example of what that could be. And the point of this patent is to be able to turn off the extraneous points. And so if you wanted to focus on just one point, let's say that you wanted to update the data relating to one point, whether it's on the line or whether it's just a thing like a junction box that is just one data point, the point is that you turn off the receipt of information about the extraneous data points so that you can be dealing with just one, because that's something that somebody in the field might want to do when they're updating the data on it. Can I turn you to column two of your patent? Because the background section, column two, I guess starting at line eight, you've got a long paragraph and then a short paragraph. And I'm not sure I understand the terminology, but it very much says the whole point of this patent is to be able to, when you're encountering, multiple buried assets. And that's the importance and significance of this versus encountering one buried asset. It's encountering multiple data points, or multiple buried assets, yes, that have signals that are interfering with each other and that's why you want to turn some of them off. And that's why you might want to just focus on the one data point. The point of this thing, I know it's called, it has in the title multiple buried assets, but the point is to be able to isolate what you're dealing with, because you might be getting these interfering signals. That's the whole point of this patent. But that wouldn't be a problem if it was just a singular buried asset. If it's a singular buried asset with only one data point, so it's not a line and it's just a junction box or something like that, then you don't have that problem. So if there's one data point, there's no problem and there's no applicability. So this patent was intended to be covering a group, right? More than one? In general, it would be covering the group of data points that are retrieved. But if you want to focus on one of them, then you turn the other ones off. I'm sorry, I take it that, I guess I'm understanding the question to be, if you have, say, a junction box for which you can generate a little buffer zone on one data point, remember the junction box, is just draw a circle around it. I took the question to be, how in that circumstance could there be a problem of interference by some nearby area asset? Say there's a junction box. There could be. And there's a pipe over here. And so you've got these conflicting or interfering signals and you want to try... But if you have a group of data points, you have a junction box data point and you have the other data point. I understand your argument that you want to be able to turn the interfering stuff off, but that's because the group is more than one. And so, sure, at the end of the day, you might be focusing on one, but you've identified more than one as part of the method. Judge Oreck actually ruled for us on that point because, as it turned out, when they showed their video, they pull in all the different data points too. They always pull in groups of data points. The dispute is how many data points you need for a single buried asset. He said at least two. You say what we'll do. Yeah, I don't see how you'd necessarily have two for a junction box. Can I just bring this back a little? Because the issue before us, we had a discussion that is if we could, and I think we would have the ability to take this case up and decide whether or not the claimants reject your thing that he couldn't have done it on 12B6 and just decide the correctness or incorrectness of the claims instruction done here. But I saw the issue a bit differently. You want to establish that he shouldn't have done it. We've already cast aside the notion that there's black-letter law that we can't do claims instruction. So in the absence of that, you've come up with the argument on the spec, which as Judge Hughes points out, well, any judge looks at the spec, pure question of law. In the complaint, as I recall, you did have one line going to the definition of group saying that persons skilled in the art would have defined group to include one. I think that's what you said. And because that's what they do in mathematics and that's what they... Is it your argument that that's the reason that the district court erred here because all inferences should be going in your direction and you should have been entitled to put on that additional evidence to inform the legal question, but at least there's an evidentiary component here about one skilled in the art. Is that what your argument is? You're just saying, no, it's all about the spec and it's all about a question of law. No, that was part of the argument as well that if you look at... We said it was the mathematical definition of group that an artisan in this buried asset location field would know. And did you... If this case... If we rejected coming... Resolving this on 12B6 and next goes to summary judgment, but there's presumably some sort of Markman hearing. Is there stuff you have to say and put on evidence that you have to put on that you have available to you to inform the district court's judgment notwithstanding what he may ultimately decide in the end anyway? Well, we definitely have an expert who was ready to go. We were going to have the claims construction hearing very soon. So is that your argument with respect to why 12B6 was it inappropriate in addition to the one that we've already kind of rejected that claims construction is absolutely barred? Yeah, that was the main argument other than NELCO. I'm not sure why, if there was a full claim construction process taken, why 12B6 would be barred. It could well be that the claim construction, after you've gotten all the process you asked for on the claims construction, that Judge Oreck would conclude the correct claim construction is group requires at least two data points for an individual buried asset at which point he could say the facts alleged in the complaint do not allege that in the accused product there is more than one data point for a buried asset. Dismiss. That doesn't have to be summary judgment. I'm a little confused. Is your honor saying that if we had the claim construction hearing and then there was a 12B6? No, there's a map, Matt. And he decides the claim construction is done there again, and your complaint doesn't have any allegations, why wouldn't it be 12B6? Why does it have to be summary judgment? I guess it would have to be 12C probably at that point, because they would have answered. I guess that would be possible if he went with a claim construction that we disagreed with, and then we'd be here again saying that we disagreed. So what are you asking us to do in that regard? You have to tell us what you would do if you had the ability. You have to say that there is something that we were prepared to do, we would have done, and we didn't get to do because of the posture of this case. You mentioned an expert declaration. You wanted to look at your expert declaration. We had an expert. We did not submit a declaration because it was a 12B6 motion. We had an expert who was getting ready for the claim construction hearing. At the claim construction hearing, I also expect that we would have put in more evidence of the prosecution history because there were related patents, and I think they make the points that we've made more clear as well. Did you make that argument to Judge Orrick? Did you say, hey, wait a minute, 12B6 is premature because we want to put out an expert declaration about group, and we have prosecution history that we think is one that's left. Did you say that to him? We definitely said that we wanted to have more. We wanted to have a claim construction hearing which was weeks away. That's a different question that you have additional evidence and stuff that may alter his claim construction. The problem here is if you didn't preserve any of that, and he comes back and says, well, they didn't preserve the right to submit expert testimony. They didn't preserve the right to allow prosecution history because they didn't tell us any of this in the opposition to the 12B6. Then we're going to be stuck with what he decided on claim construction and for us to decide whether that's right or wrong. We were proceeding under the local rules for claim construction and getting all of that stuff together. He was aware of that. I didn't make the argument in the 12B6 because it was limited to the pleadings. I wasn't going to get a declaration in. Don't you think in an opposition to a motion to dismiss, you would want to call out why 12B6 would be premature here? You can't just say, because we want a claim construction hearing. I mean, because we wanted a claim construction hearing in which we could introduce evidence of what one's guilt and how they would have construed about the prosecution history in this case and how it informs it. Did the district have any idea that's what you wanted other than, we know you wanted to argue about, to dispute the ground, the group, and the spec, but beyond that? I believe at the last hearing orally I said that. You said what? I said that we wanted to get in more about the claim construction. Well, of course, the plaintiffs always want to get past the motion to dismiss stage. I mean, you're going for this all or nothing rule that you can never do claim construction at 12B6. I can tell you you're not going to win that argument at me because it doesn't make any sense. If the claim is clear as a matter of law and the complaint doesn't plead sufficient allegations, then the district court can and should dismiss it. And so if there's a motion to dismiss file on the ground, why don't you have to give the district court some explanation of why claim construction is necessary rather than rely on well, this is just the way it's always done in patent cases, we want claim construction. I've never actually seen that as the issue before in any of the cases. That's the problem, is you're assuming you have some right to a formal claim construction hearing, and I don't think you do. So if you don't, in response to a 12B6 and you don't say their claim construction on this is wrong, and even if you think it's legally right within specification, we have evidence from the prosecution history. We have evidence from an expo and we made a good faith pleading in our complaint that the scope artisan would understand this differently. That creates an issue of fact for the district court. So they just come in and say their claim construction, we disagree with it and you shouldn't move on to claim construction when you're left with the problem that if he doesn't agree with you, and he agrees with them, then he's going to grant the motion to dismiss. We didn't just rely on NALCO, we explained why we thought the claim construction was wrong. Yeah, I'm just relying on arguing the specification or suggesting one to tell one that the New York would have construed proof in these circumstances. I have no idea what the prosecution is, I didn't see any reference in the records. No, I just, I mentioned it in an oral argument, I did mention that there was, it had to do with beyond just telling him we need a hearing because I want to be able to debate more about the impact of this specification, how it informs that. Did you, we mostly just said that the interpretation is wrong, an artisan would know that for the reasons of what's in the specification and you should have the specification inform your... And that's all legal, right? That's all a legal determination because it's intrinsic evidence which means the district court can look at your argument and look at the arguments and say we're trying to be right. And this court could then review it de novo and say that the court disagrees with the construction, that's a possibility. Do you happen to recall in which document, preferably in the joint appendix or the citation you could give, you set forth the argument about why um it was wrong to say that group means at least two? I think we said that several times. I'm happy to start with the first. Okay. The first of the group. Thank you. Thank you Judge Lurie. Thank you. You must have said something because Judge Ulrich actually addressed it, so. I think what's it, 91? Is that what it is? Paragraph 32? On the top of page 91. Oh, this is in the complaint. No, I mean in an actual opposition to one of the three motions to dismiss. Or maybe you said this in your in your motion for preliminary injunction and you just knew you'd get play or something? We said it in opposition to the motion for preliminary injunction because that's what VersaCorp I thought it was your motion. Wasn't it your motion? I'm sorry, it was probably the reply. It was about we talked about VersaCorp from the beginning, then he said I'm just going with what, in the next motion to dismiss, he said I'm going with what I came up with for the preliminary injunction and then by the time we got to the very last one I'm pretty sure that we put in VersaCorp again. You know, this doesn't feel, this case doesn't feel like one might assume 12B6, the judge just wants to get this case off its plate and he thinks this is the easiest most efficient way to do it. This judge went through with the preliminary injunction motion he encouraged you to file what, three amended complaints? He kept trying to help you and took the time to give you another chance to do things. Is that a correct sort of analysis of the proceedings as they went down below? Judge Orrick not only was helpful but also changed his rulings. So originally he said your product your device you haven't shown that the accused device brings in a group and they had originally said it doesn't either receive a group two or more and it doesn't generate a buffer zone based on two or more. We showed the video and then he changed his mind about that one. We were getting close to the claim construction hearing. By that one he changed his mind about the receiving. It ended up on the absence of any allegation that the generating of the buffer zone was based on at least two data points per asset. Yeah, but part of the specification that we were going over today shows that if it gets one it would be generating a buffer zone around the lawn in the places that you are cited and as I said in columns nine and ten. Can I ask just one more question? I know we're super rare there. Let's assume we don't think you've preserved any arguments that you should have been allowed to submit extrinsic evidence or expert testimony or anything like that. And so we're just stuck with the language of the claim in the context of the specification and since it's de novo we presumably can figure out for ourselves whether your interpretation and their interpretation is correct. Is there nonetheless any good reason that we may not want to do that? We think that there was problems with the analysis and we want to send it back for kind of a more detailed discussion group in the context of this specification. That would be a good outcome because your honor pointed out things that we did not address. I had not thought of that. I was basing it all on the law that I knew of. We could have raised points about when we should bring in the prosecution. I don't understand why you aren't on notice that when you get a 12B6 motion you need to make all the arguments in response and not just assume that when you say we need claim construction the court is going to kick it to aftermarkment. Maybe that's the typical way of doing things but you put the district court in a bad position by not being specific about that on the record. Did you preserve the argument? Maybe you did. I hadn't thought of this before but you're appealing the motion to dismiss most of your arguments that he couldn't do it. Do you think your appeal includes but as an alternative he's wrong on the claim construction I'm appealing the substance of the claim construction and you should reverse him on the claim construction. 12B6? Yes. We started with Malco and then we said if you are going to construe this claim why would you do that about a plural versus singular and then finally if you're going to say that you're interpreting the claim you should look at the entirety of the specification and consider those things when you're interpreting it and we disagreed with the way that he disregarded it. We think he disregarded the specification. This conflicts with my understanding of the meeting. Thank you. Let's hear from the other side finally. Thank you for your patience and we'll certainly if necessary take more time to allow you to speak on these issues. Thank you your honor. May I please the court Jason Mow from Metro Tech. The district court properly presided to dismiss both Udo's patent infringement claim and its intentional interference claim and as the court was noting I think there's a lot of labor issues because Let me just jump right to the claim construction because I don't have any problems with the notion that the district court could have done this under 12B6 but I do have problems with the way he looked at the term glue and he certainly looked at the specification because he noted that there was conflicting language to the memo. I have a hard time understanding why he found that there wasn't sufficient explanation in the specification from every it's not a lot but there's some discussions as we talked about in the specification where it does suggest you can look at just one data point in the operation of this patent. That is the kind of evidence we often look to to define a term different than its ordinary meaning. Can you address why he didn't look at that and then assuming we can just do it together why that isn't enough to suggest that his claim construction is wrong. Yes your honor. I actually believe the district court did look at it and he was looking at it in the context of the generating limitation. So I'll point you to appendix 63 that's the first reference column 5 line 63 or so. Before you point to the patent can you point to the J.A. page where Judge Oreck discussed these things. Yes. There are four opinions here and I don't have in my memory what things he said in which opinions. Look at appendix 39 I think that this is in I think he's talking about the generating limitation this is the order granting the motion to  I think it is. He's talking about figure A on page 37. That's right. So he starts on I think appendix 38 he's talking about the third amendment complaint figures 4A through 4G and so those are the portions there. Right and undeniably every one of those has at least two data points for the buffer zone. The argument on the other side is as the specification is almost insufferable about saying it constantly uses in the example the embodiment example, the example embodiment carefully the words that are saying in the invention I don't mean insufferable what I mean is legally extremely excellent. Understood your honor. Appendix 37 talks about and this is in Judge Oreck's order and I'm looking at lines 22 through 27 the correct allegation is that even if the accused product RDK Pro You're about six lines from the bottom. That's right. Line 23, that's correct. It says the accused product RDK Pro were using just one walk back point at the time to generate buffer zones over and over. That is the functional equivalent No one is talking about DOE I'm interested in what he said about claim construction. I see. I will find out for you in a second. He didn't address specifically this column, column 5. There is a passage where he says Oh, I see that there are a couple of one or more references, but I mean that group is just so darn plain. Doesn't he say something like that? He does. Where is that? Well, that's in the preliminary injunction, if that's what you're thinking of. Page 6 and 7. And he gives the construction there. Yes. That's very brief. I think that's what I was recalling, where he does refer to this passage, but he says neither is supposed to be ordinary. Is that the one and only place where he discusses the one or more? Is there anything additional? I think there is additional. These are the two places, the bottom of column 5 and the bottom of column 9, top of 10. Did Judge O'Rourke say once the motion to dismiss cycle was beginning, on this point, on group, I'm just going to follow what I said before, or is it still an open issue? It's still an open issue. In fact, I think Judge O'Rourke was saying, even under Iqbal Twombly, he was saying either under 1, if group or other asset data points means 1 or 2, it wouldn't satisfy the generating limitation. He wasn't actually saying it needs to be construed. He actually says in an order that that's premature to determine whether it's 1 or 2. But the generating limitation requires two or more, and that goes back to the figures we were just describing, figures 4a through 4g. Each of those examples has... I think we're focused, at least I'm focused in my mind on a different question from the one you may have just answered. We talked extensively about whether on the motions to dismiss there was an opportunity and obligation on the part of the plaintiff to say on this interpretation of 2 or more per buried asset, we need more process because here are some of the things that we think you need to consider that you haven't considered yet that we really even haven't had a full opportunity to present. A threshold question about whether there was essentially a forfeiture of the opportunity is whether claim construction was still at issue in the motion to dismiss or whether he thought that on the group interpretation issue he was done with that because he had already decided it. I think with the group interpretation with respect to the generating limitation, I think Judge Orek was clear that he had decided it required two or more to satisfy the generating limitation. So, I'm a little confused now, but I'm looking at claim one. Are you suggesting that the group of buried asset data points in the generating phrase means something different than in the receiving phrase above it? So, if a group of buried asset data points can be a singular data point, then the generating set will be based on a single data point, wouldn't it? If we're arguing now that we need some claim construction on what generating means, then this has to go back because I don't think any of this was described to me in the briefs clearly. I don't think we are arguing with you. So, my understanding, just to see if it's right, he concluded at some I think early stage that group requires at least two data points for a given buried asset. He ultimately was persuaded by the video or something on YouTube that your product does actually receive at least two data points sometimes for a given buried asset, but he concluded you nevertheless win on the generating because you never use two data points to generate a buffer zone, even though you've received them. Is that right? That is correct, Your Honor. Okay. I wanted to go back to Judge Hughes. You were asking me a point about claim construction earlier, and you were saying, well, let's say we wanted to interpret it. What did Judge O'Rourke or what did the claim language mean if we had to interpret it to NOBLE right now? And I wanted to step through the portion of the specification, starting in column five, appendix 63. The first quote there in column five, we go to line 63, talks about a database may store one or more records for each buried asset. And so that's the one or more language. But of course, it just finished a sentence. Oh, okay. My apologies. A database may store device 120 may store one or more records for each buried asset, and each record may include one or more buried assets. So that point is, even that sentence contemplates storage of only one data point for a particular buried asset. That's the first place in the spec. Right. It includes that. Contemplates meaning encompasses, comprises, whatever. And I think if you think about what a database is, a database is storing data. It has to store one or more points for a buried asset, because it may not be sufficient to generate that frame, but the database, the first piece of data that comes in will correlate to the buried asset. Just like there was an example earlier about a junction box. But that's not what is contemplated in this claim, as I think your Honor noted. The actual buried assets, there's examples of them. Let's call them one lines. You're treating those as only examples? That's not a helpful thing for you to be doing. No, I'm not, your Honor. I was just saying that junction box was not one of those examples. That was the only point I was trying to make there. But going back to the database, you're not saying, I'm sorry to interrupt you, but you're not saying that data points itself has to be construed as plural. Data points could be one or more. It's the group that's the problem. Yes, your Honor. How does what they're talking about as a record correspond to a group? That's my problem. I mean, if these phrases talk about maestro, one or more records for groups of each buried asset, or all that kind of stuff, then it'd be pretty clear you'd be out, because they'd be defining groups. Is the record the same thing as receiving and generating groups? I would say they're not. How do we know that? There are different words. We assume that the patent means different things. I understand, your Honor. But I mean, in the database context, you're putting information into a database. It's going to be fed one or more records. That's how the database actually receives data. So the group here would be two or more records. Maybe I need to stop this. This is the problem with this entire case, is there's stuff in the specification that I know we have the ability to review for that, but without any kind of further briefing and more detailed analysis and amalgamate, it's very hard to determine whether all the stuff that's talking about is one or more. Not all. There's not very much, admittedly, and most of the actual embodiments, or maybe all of them, just seem to be two or more. But it's very hard to figure out whether these stray references to one or more are just unclaimed embodiments or meant to inform the reading of group here in a way that it normally wouldn't be understood. A lot of arguments about this particular portion. I think Ludus Counsel was referring to Column 5, Column 10. This was raised before Judge Oreck. Did he raise them before Judge Oreck? Where did Judge Oreck, I think this is where Judge Toronto started, we were looking for where Judge Oreck dealt with that. We have the very current stuff in the motion, in the preliminary injunction motion, and then we've got some stuff that you pointed out, which is 37 to 39 or so, but as Judge Toronto correctly points out, that's talking about doctrine of equivalence. Is that where you're... So tell us where and what Judge Oreck had to say about why these citations to the specs don't change his view about what you were doing. I think Judge Oreck actually referred that... None of those references actually refer to generating a buffer zone. We were talking about the generating limitation. In his order, he refers to that generating limitation. I think you are correct, Your Honor, that in the preliminary injunction order, Judge Oreck does take that on. I understand he could have potentially written more on that subject, but he did consider that argument, that the one or more limits the group of varied asset data points, and he said that doesn't make sense in light of the claim language and the specification. Okay, but do you think why is it not incumbent upon us, or at least within our discretion, to say 12B6 or what? This is not sufficient treatment. All of the arguments made can need to have been done by him, whether it's at the 12B6 or the summary judgment stage. Then he can sort out whether or not your friend has waived the right to put in other material or whatever. That's too much for me. I think, of course, the Court has the ability to say that when considering de novo, this was not the proper decision, or even to reverse and say Judge O'Rourke needs to go back and reconsider that. But I think that because Judge O'Rourke actually took this under consideration, and Udo's 12B6 motion actually was only arguing doctrine of equivalence. Opposition to your 12B6. I apologize. Opposition to our 12B6 motion only argued doctrine of equivalence for one That's because the judge, I mean, we had a series of these, and I think in a way that he was trying to be helpful to your friend, but we made it to three on his predicate. He was telling them to do this, right? He was making the suggestion. It wasn't I mean, it's sort of like, all you've got left given where I am is DOE, so go for DOE. That doesn't kind of press to call that a waiver. Well, I mean, going back to what the court was saying, he's had a chance to write a preliminary injunction motion. He's had multiple chances to 12B6. I'm talking about Udo had that chance. So it had a chance to raise any arguments about why the construction was wrong. I mean, kind of preliminary plain construction for purpose of preliminary injunction hearing can't be binding on the case necessarily. What do you do with their allegation that in their complaint they specifically allege, and I didn't go back to look to verify, but I'm going to assume it's true, that a person still would understand group in this patent and this field to mean one. If you take that allegation and construe it in the light that's favorable plaintiff, and that seems to me to be a factual allegation. Did that ever come up again, or is that a waiver? Or is it sufficient to plead it in the complaint, and Judge Oreck should have grappled with that allegation at some point in the claim construction process? I don't believe that was in the complaint. I'm looking at appendix 87. There's so many documents. Maybe I'm in the wrong document. I think this is the third amendment. The bottom of paragraph 19 a person of ordinary skill in the art would understand the 441 patent could work with a buffer zone around a single data point in this  Is that what we're talking about, and aren't all inferences supposed to go to the other side? I think all reasonable inferences should go to the other side, but looking at the claim and the specification, excuse me, Judge Oreck actually didn't say that in the order dismissing the second amendment complaint. We were talking about the Doctrine of Equivalence argument earlier. He didn't actually say that they never allege if it's one or two. He didn't say that, and that's in appendix 26. It was Udo that dropped two and focused only on one. We were talking about whether they were impermissibly narrowed to only argue a Doctrine of Equivalence argument. I mean, this is the problem for me, though. A lot of what you're saying seems to suggest that there's label on their part for not being specific about this, but the way this went down, it's very unclear whether anybody ever grappled with this notion. Let's just assume, for purposes of the hypothetical, that they have indisputable evidence that for this specific industry and technology, everybody uses the word group to mean one or more, and that that allegation is in their complaint. Why wouldn't that be enough to defeat a 12b6 motion and at least proceed to a mark-down on claim construction? Setting aside the waiver, I know, I assume you had their response. But if that had been the case, and he had said, no, no, no, this patent language is clear in its face, it's plain, and they're their main group, it means two or more, there's nothing in the specification that alters that. Even if that, as a matter of it all, is true, and the specification is they've made a good faith allegation that extrinsic evidence would alter that conclusion, doesn't he have to grapple with that extrinsic evidence? I think he does not have to grapple with extrinsic evidence based on how clear their claim and specification are. If their clarity is there enough that it teaches away from the truth. I mean, I think you're, you know, I'm not going to hypothetical so you can concede because I'm not sure that's what happened here. That doesn't seem right to me, that on a 12b6, if somebody has come in with a complaint and said, and I know, let's just make it very clear, that group primarily means two or more. The patentee admits group primarily means two or more, the specification on its face doesn't have any specific lexicography, but in this industry, every skilled artisan would know that group means one or more. Isn't that enough to create a factual issue that at least has to be resolved at markment? I think that's more like Malco to your point, right? If there's more And if that's what had happened here then it would have been air where it's hard to do this at the 12b6 stage. It is unclear whether that sentence and the complaint is sufficient or if they preserved that. I don't know if you put in a complaint and don't bring it up in your opposition to a motion to dismiss that you necessarily preserved that. But that's kind of the problem with this whole case is the way it happened and you know, there was lots of moving parts and I think they gave the plaintiff numerous opportunities, but it's very unclear to me how we arrived at this claim construction necessarily. Did you ever do briefing? I mean, you were prepared, but we're not going to go down that road. I mean, and I was prepared to listen to your rebuttal of the points made about the various pieces of the specification. Was that ever debated or discussed with Judge Orrick in the papers here? Before Judge Orrick? I think the terms came up the two or more came up repeatedly. I'm talking about his arguments pointing to two or three places in the specification which he argues rebuts the fact that group can only mean more than one. And I'm sure you have good or at least answers to those arguments. Was that... Did that happen? Yes. Yes. At which stage? That definitely happened, Your Honor. So if we look at... I'll go to 118. So 118 is our motion to dismiss. And if we start on Appendix 120, line 11, it says Udo's second, Udo's TAC raises a new attorney argument trying to re-argue what this court has already repeatedly held namely that a group of buried asset data points can include a single data point. And then we go on to point to I think we talked about the YouTube video. No, well, Ronnie says that they yeah, the point about the mathematical computing sense which is in their second or third amended complaint. That's right. But he seems to say there, yes, this is, I mean, you actually, I guess, saying there that the court's already drawn its conclusion about the term group. It sounds like you're saying actually that's not really an issue anymore. There are issues about whether the group is is used for, is received, and there are issues about whether it's used for generating the buffer zone, but the interpretation of group sounds like you're saying we're past that. That's settled. I don't think in not surprisingly, but the motion for preliminary injunction and opposition and reply are not in the joint appendix. There must have been some briefing on that in the PI papers, because back to where you pointed out, page six and seven of the opinion denying the PI in June 2022, Judge O'Rourke is discussing this point, so one or more points. And is that what your citation is on line 23 at 120, document 21, is that the court's decision on the PI? You say the court has previously stated it. Yes. I assume that's the reference. Yes, that's right, Your Honor. I was looking at the motion to dismiss, and this was addressed some of the language was addressed in the earlier motions. I'm looking for it. I apologize, Your Honor. It's okay. You didn't expect this to happen. Okay. This stuff you're quoting from your motion to dismiss that we're looking at, is this the motion, the last one that was granted? The third amendment complaint, yes. Okay. But as part of the appendix, we included other motions to dismiss. I guess what I'm concerned about is this specifically acknowledges that the third amendment complaint raises, you call it an attorney argument, but it's in the complaint that a group of data parents in the mathematical sense could be one. And if that's a factual allegation, then that, you know, if it's good faith and, you know, construed in the right way, shouldn't the court have grappled with it, except, and we don't have the entirety of the plaintiff's opposition, so maybe they're opposed to it, but the pages we have following it don't seem like they're addressed that. I think the argument, when we're saying it's an attorney argument, is you can't just put in the construction into the complaint and then say you have to take that as true. But that's not what even your thing suggests. What your thing suggests is not construction, but that a skilled artisan would understand, which is a matter of fact, in the mathematics field, that this is a definition. I don't think that's a legal argument. That's what an artisan would think. And isn't there an inference to be drawn from that at 12b6 stage? Isn't he entitled to an inference? A skilled artisan would understand. I think he can make an inference at the 12b6 stage. Just on the patent, in terms of amending the complaint, I just wanted to note that that's a different standard, as the court knows. It's not de novo. It's actually at the discretion of the court. He's had multiple times, Aruno's had multiple times to consider amending the complaint. So, to the extent... And we take that. And I've already mentioned this, that Judge Oreck seemed to not be trying to efficiently get rid of this case, but trying to be helpful in terms of ferreting out all of the issues in our case. So, we take that. Well, any other questions? Thank you very much. We're very short two minutes. I just wanted to clarify something. Can I just have one question? Come up. That last point where we're talking about your third amendment complaint alleging what it's good Iverson notes about the term in mathematics, which they acknowledge in their last motion to dismiss, did you respond to that in your opposition? Because it's not that issue about what it's good Iverson thinks. Because we have excerpted pages in the appendix, and I don't see any discussion in the excerpted pages that you said you can't dismiss this because it's good Iverson would define group as one or more. What I recall that we argued was that he could reconsider what he'd thought before. What we argued to him was that he could reconsider what he had concluded before because there's been more discovery and things like that. Specifically on that point? I believe it related to group, but I cannot recall from memory. In that opposition? In the last opposition we said a lot of things, and we were just saying for doctrine of equivalence, we were saying that because we were stuck with claims construction we didn't want. I understand, but if you didn't respond, if you put this in your amendment complaint, they acknowledged it and said they shouldn't be able to raise this, and you didn't respond in your opposition, wouldn't that be waiver? I'm sure we did respond. That sounds like waiver, what you're describing. But we don't have those pages, I don't think. I thought the rule was that we put in the appendix only those pages that were referred to in the briefs. I would think that arguments about whether skilled artisan would think about the proper construction of group would be central to your argument here. We can supplement now if the court wants. We have your document. I did want to point out... You made the argument about ruling claim construction, but I'm not sure you made the specific point about the allegation of what might be a factual point about a relevant artisan's understanding. On page 15 of the appendix is where Judge Work says I already decided this issue. You were saying that it was whatever the term we used in our case is that it would have been... Utopian. Thank you.  Anything more? We thank both sides. Case is submitted.